IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARYLAND TRANSIT ADMINISTRATION, : | | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. AMD 04-3650 |
| | : | |
| NATIONAL RAILROAD PASSENGER CORPORATION, | : | |
| Defendant | : | |

: : :

| | | |
|---|---|---|
| MARYLAND TRANSIT ADMINISTRATION, : | | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. AMD 04-3683 |
| | : | |
| NATIONAL RAILROAD PASSENGER CORPORATION, | : | |
| Defendant | : | |

: : :

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. AMD 05-403 |
| | : | |
| MARYLAND TRANSIT ADMINISTRATION, | : | |
| Defendant | : | |

...o0o...

MEMORANDUM OPINION

These three cases arise out of a pair of arbitration proceedings between the parties, Maryland Transit Administration ("MTA") and National Railroad Passenger Corporation

("AMTRAK"). Two distinct arbitration awards are at issue. In the first award, a majority of the arbitration panel ruled in favor of MTA, and concluded that a train collision near the Baltimore train station was the fault, i.e., resulted from gross negligence, of an AMTRAK locomotive engineer. In case number AMD 04-3683, MTA seeks confirmation of that award pursuant to the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 9.[1] The court concludes that MTA's petition is untimely, and thus shall dismiss that case without prejudice.

In the second award, the majority of a different panel of arbitrators concluded that notwithstanding the first arbitration award, MTA had contractually bound itself to procure liability insurance to protect both itself and AMTRAK from losses arising out of accidents of the type involved here. Accordingly, the panel concluded, MTA was required to provide insurance coverage to AMTRAK for some of the losses occasioned by the locomotive engineer's gross negligence. In cases numbered AMD 04-3650 AMD 05-403, respectively, MTA seeks an order vacating, and AMTRAK seeks an order confirming, the second arbitration award. For the reasons stated herein, the court shall confirm the second arbitration award.

---

[1] Title 9, § 9 states, in pertinent part:
If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.
9 U.S.C. § 9.

I.

MTA, formerly known as the *Mass* Transit Administration, is a part of the Maryland Department of Transportation. AMTRAK is a corporation organized under the Rail Passenger Act of 1970, 45 U.S.C. §§ 501, *et seq*., and the laws of the District of Columbia.[2] The parties are signatories to an agreement dated January 1, 1994 ("the Agreement"), pursuant to which AMTRAK succeeded CSX Transportation, Inc., as a provider of equipment, personnel, and various services to MTA in respect to the operation of commuter rail passenger service between Perryville, Maryland, and Washington, D.C.

The Agreement contains a broad arbitration clause, providing as follows, in part:

> Any dispute, claim, or controversy between the parties hereto relating to the interpretation, application, or implementation of this Agreement shall be submitted to binding arbitration . . .
> Any arbitration award rendered hereunder shall be final and binding upon the parties. Judgment upon any such arbitration award may be entered in any United States District Court having jurisdiction over the parties.

Agreement, ¶ 22.

Section 9 of the Agreement is entitled "Risk of Liability." It provides as follows, in relevant part:

> Except as provided in the second paragraph hereof, [MTA] agrees to indemnify and save harmless Amtrak . . . and other third parties to the extent Amtrak is obligated to indemnify or save harmless such third parties, irrespective of negligence or fault of Amtrak or such third parties, for all damage or liability for personal injury, death, or property damage which would not have been incurred but for the existence of [the commuter rail service]

---

[2] As the United States owns more than one half the stock of AMTRAK, subject matter jurisdiction lies in these cases pursuant to 28 U.S.C. §§ 1331 and 1349. *Hollus v. Amtrak Northeast Corridor,* 937 F.Supp. 1110, 1113 (D.N.J.1996), *aff'd,* 118 F.3d 1575 (3d Cir.1997).

provided by Amtrak; provided, however, that [MTA] shall have no responsibility to Amtrak or any other party for injury or death to Amtrak employees engage directly in the provision of the [commuter rail service].

[MTA]'s agreement to indemnify and save harmless Amtrak, as set forth in the first paragraph hereof, shall not apply to any claim for damages or for any liability for personal injury, death, or property damage, including damage to Amtrak property, (a) which is caused by the gross negligence, or willful or wanton conduct of Amtrak as agreed by the parties or determined by arbitration pursuant to Section 22 of this Agreement . . . .

*Id.*, ¶ 9.

Finally, section 10 of the Agreement is entitled "Liability Insurance." It provides as follows, in relevant part:

> (a) Liability Insurance
> [MTA] shall procure and maintain for the duration of this Agreement, liability insurance, with combined single limits for bodily injury and property damage of at least $150,000,000 per occurrence, with Amtrak and [MTA] designated as the named insureds. Such insurance shall cover the Named Insureds' liability for injury or death of persons and damage to property, including coverage for punitive or exemplary damages, arising out of the [commuter rail service] . . . . [MTA] shall have the right to self-insure for any part of the insurance procurement up to $5,000,000 per occurrence. Amtrak shall have the right of approval that the insurance placements and self-insurance arrangements adequately protect Amtrak against liability for bodily injury, death and property damages, which approval shall not be unreasonably withheld.

*Id.*, ¶ 9.

On June 17, 2002, at a location just south of the Baltimore train station, a northbound AMTRAK intercity passenger train destined for New York proceeded through a stop indication and collided with a southbound commuter train, causing significant damage. Unable to agree on the allocation of fault for the accident, and pursuant to the arbitration clause in the Agreement, the parties proceeded to arbitration under a bifurcated process

-4-

before two separate arbitration panels. The issue presented to the first panel was whether, under §10(a) of the Agreement, the AMTRAK engineer was guilty of gross negligence in causing the collision, thereby relieving MTA of any responsibility to indemnify AMTRAK. In a 2-1 decision issued on September 22, 2003 ("the first arbitration award"), and over a vigorous dissent, the arbitration panel, applying Maryland law, found and concluded that the engineer committed gross negligence.[3]

Notwithstanding the September 22, 2003, award, AMTRAK asserted that, pursuant to §9 of the Agreement, MTA was required to provide insurance coverage to AMTRAK for the June 2002 accident. MTA denied that §9 could be read to impose such an obligation upon it in light of the first arbitration award, and as a matter of contract interpretation. Accordingly, the parties once again proceeded to arbitration. In defending against AMTRAK's claim for insurance coverage in the second arbitration proceeding, MTA asserted the following defenses: (1) claim preclusion; (2) estoppel/waiver; (3) failure to give adequate notice of the claim; and (4) the June 2002 accident did not "arise out of" the operation of the commuter rail service as required by §9 of the Agreement ("Such insurance shall cover the Named Insureds' liability for injury or death of persons and damage to property, including coverage for punitive or exemplary damages, arising out of the [commuter rail service]").

---

[3]The majority concluded: "1. The Collision resulted solely from Amtrak's gross negligence; and 2. Pursuant to the terms of the Operating Agreement, MTA is not required to indemnify Amtrak for any damages or liabilities resulting from the Collision and MTA may recover from Amtrak for its damages and liabilities resulting from the Collision."

On October 19, 2004, again in a 2-1 split decision issued over a vigorous dissent ("the second arbitration award"), the second arbitration panel agreed with AMTRAK and found and concluded that under §9 of the Agreement, MTA's obligation to provide insurance to AMTRAK subsisted notwithstanding the fact that the AMTRAK engineer was guilty of gross negligence as determined by the first arbitration panel. The second arbitration panel further found that none of the affirmative defenses offered by MTA had merit. Finally, the second arbitration panel interpreted the phrase "arising out of" as suggested by AMTRAK and rejected MTA's more limited construction of the term.

MTA filed an action in this court to vacate the second arbitration award on November 17, 2004, and an action to enforce the first arbitration award on November 18, 2004. AMTRAK filed an action to confirm the second arbitration award on November 8, 2004, in the United States District Court for the District of Columbia, and that case was transferred to this district on February 10, 2005. The court consolidated the three cases.

II.

The FAA sets out four limited statutory grounds on which a district court can vacate an arbitration award. 9 U.S.C. § 10(a)(1)-(4);[4] *see also Remmey v. PaineWebber, Inc.*, 32

---

[4]The United States Code, FAA, Title 9, § 10 states, in pertinent part:
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
    (1) Where the award was procured by corruption, fraud, or undue means.
    (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
    (3) Where the arbitrators were guilty or misconduct in refusing to

(continued...)

F.3d 143, 146 (4th Cir. 1994)(explaining that Congress has limited the statutory grounds upon which arbitration can be vacated to 9 U.S.C. § 10(a)(1)-(4)), *cert. denied*, 513 U.S. 1112 (1995).  In addition, a court may overturn a legal interpretation of an arbitration panel if "it is in manifest disregard for the law." *See, e.g., Upshur Coals Corp. v. United Mine Workers of America*, 933 F.2d 225, 229 (4th Cir. 1991) (citing *American Postal Workers v. United States Postal Serv.*, 682 F.2d 1280, 1284 (9th Cir. 1982), *cert. denied*, 459 U.S. 1200 (1983)); *Remmey*, 32 F.3d at 149; *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.,* 142 F.3d 188, 193 (4th Cir.)("Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the [FAA], or if the arbitrator acted in manifest disregard of law.") (citing *In re A.H. Robins Co., Inc.,* 197 B.R. 513, 516 (E.D. Va. 1994)), *cert. denied*, 525 U.S. 876 (1998).

The Fourth Circuit has emphasized "the limited scope of judicial review that courts are permitted to exercise over arbitral decisions." *Remmey*, 32 F.3d at 146; *see Upshur Coals Corp.*, 933 F.3d at 228 ("An arbitrator's award is entitled to a special degree of deference on judicial review."); *Apex Plumbing Supply, Inc.,* 142 F.3d at 193 ("Review of an

---

[4](...continued)
postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
    (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
    (5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrator.
9 U.S.C. §10(a).

arbitrator's award is severely circumscribed."). "Limited judicial review is necessary to encourage the use of arbitration as an alternative to formal litigation.  This policy is widely recognized, and the Supreme Court has often found occasion to approve it." *Remmey*, 32 F.3d at 146 (citations omitted); *see Unites States v. Aegis/Zublin Joint Venture*, 869 F. Supp. 387, 391 (E.D. Va. 1994) ("[T]he Court's jurisdiction under the [FAA] is strictly limited to avoid frustrating the purpose of arbitration--avoiding litigation." (citing *Jardine Matheson & Co., Inc. v. Saita Shipping, Ltd.*, 712 F. Supp. 423, 426 (S.D.N.Y. 1989))).

The Fourth Circuit has further explained the bases for the highly deferential standard of review of arbitration awards as follows:

> A policy favoring arbitration would mean little, of course, if arbitration were merely the prologue to prolonged litigation.  If such were the case, one would hardly achieve the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." . . . Opening up arbitral awards to myriad legal challenges would eventually reduce arbitral proceedings to the status of preliminary hearings. Parties would cease to utilize a process that no longer had finality. To avoid this result, courts have resisted temptations to redo arbitral decisions. As the Seventh Circuit put it, "arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party . . . ."

*Remmey*, 32 F.3d at 146 (citations omitted).

In reviewing arbitral awards, therefore, district and appellate courts are confined to ascertaining "whether the arbitrators did the job they were told to do-- not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Id*. (internal quotation marks omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int's Union*, 973 F.2d 276, 281 (4th Cir. 1992)). "Courts are not free to

overturn an arbitral result because they would have reached a different conclusion if presented with the same facts." *Id*. As the Fourth Circuit has determined, an arbitration award is enforceable "'even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion,' . . . and may only be reversed 'when arbitrators understand and correctly state the law, but proceed to disregard the same.'" *Upshur Coals Corp.*, 933 F.2d at 229 (citations omitted); *see Aegis/Zublin Joint Venture*, 869 F. Supp. at 391.

III.

A.

Under the FAA, "at any time within one year after the award is made any party to the arbitration may apply . . . for an order confirming the award." 9 U.S.C. § 9. The first arbitration award was rendered on September 22, 2003. MTA did not file its petition to enforce the award, however, until November 18, 2004, more than one year later. AMTRAK asserts, therefore, that the petition to confirm the first award is untimely and should not be considered. Citing *Sverdrup Corp. v. WHC Constructors, Inc.,* 989 F.2d 148, 151-56 (4th Cir.1993), MTA contends that the one year period is not a statute of limitations and that therefore its belated petition to enforce the first arbitration award must be considered.

The court stated the following to the parties in an earlier order:

> While I am of course cognizant of the binding nature of *Sverdrup Corp. v. WHC Constructors, Inc.,* 989 F.2d 148, 151-56 (4th Cir.1993), holding that the one year period within which a petition to confirm an arbitration award "may" be filed pursuant to the Federal Arbitration Act is "permissive," I am

also of the view that the Fourth Circuit is very likely to reconsider that holding in light of *Photopaint Technologies, LLC v. Smartlens Corp.,* 335 F.3d 152 (2d Cir. 2003)(noting that the Fourth Circuit's decision in *Sverdrup Corp.* has been seriously undermined by the Supreme Court's later decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.,* 529 U.S. 193 (2000), and concluding that the one year period is a statute of limitations). In any event, the "award" in the first arbitration decision was merely a declaratory order and . . . I do not believe the issues arising under the second arbitration award are inextricably intertwined with the issues presented in the first arbitration award.[5]

The court adheres to its view that *Sverdrup Corp.* is a candidate for reconsideration by the Fourth Circuit and, accordingly, shall dismiss without prejudice as untimely MTA's petition to enforce the first arbitration award.

---

[5]In *Photopaint Technologies, LLC v. Smartlens Corp.,* 335 F.3d 152, 158 (2d Cir.2003), the Second Circuit stated:
> [W]e read the word "may" in section 9 as permissive, but only within the scope of the preceding adverbial phrase: "[a]t any time within one year after the award is made." We therefore hold that section 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA.

*Id.* See generally Teresa L. Elliott, *Conflicting Interpretations of the One-Year Requirement on Motions to Confirm Arbitration Awards*, 38 CREIGHTON LAW REV. 661 (April 2005)(examining circuit split and urging adoption of the Fourth Circuit's view that the one year period is not a statute of limitations).

As the court suggested to the parties earlier, the dismissal of MTA's petition to enforce the first arbitration award is of no moment. First, as mentioned *infra* n. 6, MTA now takes the position that neither the first nor the second arbitration panel had adjudicatory jurisdiction over the parties' dispute. Thus, MTA effectively seeks by that argument to withdraw its petition to enforce the first arbitration award. Second, even without court action on the first arbitration award, that award is a *fait accompli*, and whether the court vacates or confirms it, there remains the real dispute over the enforceability of the second arbitration award. In other words, it is clear that MTA filed its belated petition to enforce the first arbitration award merely in an attempt to shore up its arguments in support of its petition to vacate the second arbitration award.

In any event, as mentioned in text, this court shall dismiss without prejudice MTA's petition to enforce the first arbitration award in view of the possibility that MTA could bring an action at law on the "same claim." *See Photopaint Technologies, LLC,* 335 F.3d at 159 (acknowledging that an action at law is a valid alternative means of enforcing an arbitral award).

B.

Application of the appropriate standard of review to the issue of whether to confirm or vacate the second arbitration award, which compels MTA to provide insurance coverage to AMTRAK for the June 2002 accident, requires the court to reject MTA's challenge. Even viewed in the light most favorable to MTA's contentions in mounting its challenge to the second arbitration award, the arbitrators have committed, at most, mere errors of law. Such a ground does not provide a justification for vacating an arbitral award. *National Wrecking Co.*, 990 F.2d at 961-62 ("The arbitrator's award may be erroneous, but, even if it is, it does not evidence a manifest disregard for the [law]").[6] Plainly, the second arbitration award (a

---

[6] For the first time throughout the proceedings, in its opening brief filed in this court, MTA asserted a defense that it had failed to raise before the arbitration panel, namely, sovereign immunity, based on an alleged statutory "evolution" over several decades in Maryland law, as set forth in myriad provisions found in Maryland state procurement law. In short, MTA now claims that the arbitrators "exceeded their powers" because they should have recognized that the Agreement between MTA and AMTRAK was a "state procurement contract" ( and thus called for the application of state administrative and judicial review proceedings rather than arbitration), and should have refused to arbitrate the parties' dispute, notwithstanding the plain language of the arbitration clause set forth in the Agreement, and notwithstanding MTA's full participation, with the assistance of counsel from the Office of the Attorney General, in the negotiation of the Agreement and in the arbitration proceedings called for thereunder. The court offered to remand the second arbitration award to the arbitration panel to permit the parties to litigate this newly-discovered issue before the arbitration panel. *See* Memorandum to Counsel dated May 22, 2005. AMTRAK vigorously disputes MTA's eleventh hour contentions regarding sovereign immunity but it accepted the court's proposed remand, suggesting that some additional discovery might be appropriate; MTA rejected the court's proposal outright.

Accordingly, MTA having voluntarily participated in the arbitration proceedings after voluntarily entering into a binding agreement to do so, having failed to raise the issue of sovereign immunity before the arbitration panels, and having declined this court's invitation to present the issue to the arbitration panel upon a remand, the court regards the issue as waived by MTA. *See In re Pegasus Gold Corp.,* 394 F.3d 1189, 1195 (9th Cir.2005) ("[Sovereign] immunity is not absolute, however, and 'a State may waive its sovereign immunity by consenting to suit.' *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S.

(continued...)

copy of which is attached to this Memorandum Opinion) demonstrates that the arbitration panel diligently and conscientiously considered MTA's affirmative defenses and contract interpretation contentions, identified the correct principles of controlling Maryland law which informed its decision, and reached well-considered, though disparate, legal conclusions in the light of the (largely undisputed) facts underlying those conclusions. Accordingly, the petition to vacate shall be denied and the petition to confirm shall be granted.

IV.

For the reasons set forth herein, case number AMD 04-3683 shall be dismissed without prejudice and the second arbitral award shall be confirmed. An Order follows.


Filed: June 6, 2005                                /s/
                                                   ANDRE M. DAVIS
                                                   UNITED STATES DISTRICT JUDGE

---

[6](...continued)
666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). *Waiver will generally exist where the State either voluntarily invokes jurisdiction* or *makes a clear declaration that it intends to submit itself to jurisdiction. Id.* at 675-76, 119 S.Ct. 2219.")(emphasis added); *Hardie v. United States*, 367 F.3d 1288 (Fed.Cir. 2004)(rejecting claim of the United States that sovereign immunity bars compelled arbitration); *New Hampshire v. Ramsey*, 366 F.3d 1, 15-18 (1st Cir. 2004)(finding partial waiver of sovereign immunity by state's litigation conduct, including consent to binding arbitration, and noting that "the state, having gained the advantage that it sought, is bound by the choice that it made.").